IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHYRASSIE GREEN,**[1] | * |
| | * |
| Plaintiff, | * |
| | *   **Civil No. TMD 15-3467** |
| v. | * |
| | * |
| | * |
| **NANCY A. BERRYHILL,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| Defendant.[2] | * |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Chyrassie Green seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16).[3] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not

---

[1] Although Plaintiff's name appears on the docket as "Chryassie Green," her name appears in the complaint (ECF No. 1) and throughout the administrative transcript (ECF No. 10) as "Chyrassie Green."

[2] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[3] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1972, has a college education, and previously worked as a teacher, special-education teacher, database administrator, and user support analyst.  R. at 27-28, 233.  Plaintiff applied for DIB on September 24, 2013, alleging disability beginning on June 8, 2012, due to degenerative arthritis in the spine and chronic adjustment disorder.  R. at 16, 204-07, 232.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 84-114, 117, 119-21.  On December 18, 2014, ALJ Francine L. Applewhite held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified.  R. at 34-83.  On January 14, 2015, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of June 8, 2012, through the date of the decision.  R. at 13-33.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on September 11, 2015.  R. at 1-4, 12.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On November 13, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was

reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## **Summary of Evidence**

The Court reviews here and in Part VI below Plaintiff's relevant medical evidence.

**A.     State Agency Medical Consultants**

On December 4, 2013, a state agency consultant, Maurice Prout, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairment under Listing 12.04 relating to affective disorders (R. at 88-89). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Dr. Prout opined that, under paragraph B of the applicable listing, Plaintiff's mental impairment caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 89. Dr. Prout did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 89. Dr. Prout ultimately found that Plaintiff's mental impairment was not severe. R. at 89.

On January 7, 2014, a state agency medical consultant, A.R. Totoonchie, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 90-91. Dr. Totoonchie opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 90-91. Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl, but she had no manipulative, visual, communicative, or environmental limitations. R. at 91.

On August 14, 2014, another state agency consultant, A. Serpick, M.D., again assessed Plaintiff's physical RFC. R. at 104-06. Dr. Serpick opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 105. Dr. Serpick also opined that Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl, but she had no manipulative, visual, communicative, or environmental limitations. R. at 105-06.

On August 21, 2014, another state agency consultant, Robin McCallister, Ph.D., used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09 relating to affective, anxiety-related, and substance addiction disorders (R. at 101-03). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06, 12.09. Dr. McCallister opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 102. Dr. McCallister did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 102. Dr. McCallister thus assessed Plaintiff's mental RFC (R. at 106-08) and opined that she was moderately limited in her ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; and to (5) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 106-08. Dr. McCallister opined that Plaintiff could

4

(1) understand and remember simple and detailed instructions; (2) typically carry out simple and some detailed instructions in two-hour increments during an eight-hour workday across a forty-hour workweek; (3) typically relate adequately without evidence of the potential for significant problems with co-workers and supervisors; and (4) adapt to changes and pressures in a routine work environment.  R. at 108.

**B.     Hearing Testimony**

   **1.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

> [Plaintiff] alleged that physical and mental symptoms limit her ability to engage in work activities.  Specifically, she averred that her degenerative arthritis in the spine, and chronic adjustment disorder rendered her disabled [R. at 232]. [Plaintiff] appeared at the hearing and offered testimony that her medications make her fall asleep.  [Plaintiff] stated that 2-3 times a week she will isolate herself at home.  [Plaintiff] indicated that she will not do any activities at those times.  [Plaintiff] stated that she has daily pain in her back, radiating down from her lower lumbar section into her buttocks.
>
> [Plaintiff] stated that her right hand caused her to drop things at times. [Plaintiff] stated that she could sit for 15-20 minutes before having to shift position.  [Plaintiff] indicated that she has difficulties with incontinence tied to her back.  [Plaintiff] stated that she must use the restroom about an hour after drinking.  [Plaintiff] testified that she uses pads she changes 2-3 times a day. [Plaintiff] stated that she will dig and scratch at herself when things are out of her control.  [Plaintiff] submitted a function report indicating that she could walk for 10 minutes before having to stop and rest [R. at 254.]  As a consequence, [Plaintiff] believes she is incapable of all work activity.

R. at 21-22; *see* R. at 39-77.

   **2.     VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience who had the RFC outlined in Part III below could not perform Plaintiff's past work but could perform the sedentary, semi-skilled jobs of data entry operator, civil service

5

clerk, order control clerk, or actuarial clerk.[4]  R. at 28-29, 78-80.  The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[5]  R. at 81.  A person with a loss of productivity of 15% to 20% would not be able to maintain full-time employment.  R. at 81-82.

### III

### Summary of ALJ's Decision

On January 14, 2015, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of June 8, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a data entry operator, civil service clerk, order control clerk, or actuarial clerk.  R. at 18-29.  The ALJ thus found that she was not disabled from June 8, 2012, through the date of the decision.  R. at 29.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  *Id.* § 404.1568(b).  Semi-skilled jobs "are similarly less complex than skilled work, but more complex than unskilled work."  *Id.*

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In so finding, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. R. at 20. The ALJ noted that Plaintiff "reported that she could follow written and spoken instructions 'fairly well.'" [R. at 254.] On exam of August 21, 2012, [Plaintiff's] memory was adequate [R. at 593.]" R. at 20.

The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional stooping, crouching, crawling, or kneeling; no exposure to hazards, such as unprotected heights; frequent grasping and handling with the right dominant hand; and work in a low stress jobs [sic], defined as occasional decision-making, and no fast paced production.

R. at 21.[6]

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 21. The ALJ gave "some weight" to Dr. McCallister's opinion but found that "the record as a whole supports a finding that [Plaintiff], as a result of her severe mental impairments, is limited to low stress jobs, where low stress is defined as occasional decision-making, and no fast paced production, but has no other limitations in work-related mental functioning." R. at 27.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[7]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[7] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[8] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-11,

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 15-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that the ALJ erroneously failed to include any limitation on concentration or task persistence in the ALJ's RFC assessment, instead limiting her to low-stress jobs and no fast-paced production. *Id.* Plaintiff further contends that remand is warranted because the ALJ did not adequately explain her RFC assessment limiting Plaintiff to low-stress jobs and no fast-paced production. *Id.* at 7-9. Plaintiff also maintains that the ALJ failed to include any limitation on her ability to stand and walk in the RFC assessment. *Id.* at 9. Plaintiff finally asserts that remand is warranted because the ALJ erred in evaluating her 100% disability rating from the Department of Veterans Affairs ("VA") (R. at 323-413). *Id.* at 9-11. According to Plaintiff, substantial evidence thus does not support the ALJ's decision. For the reasons discussed below, Plaintiff's assertions are unavailing.

A.    **Plaintiff's Moderate Limitations in Maintaining Concentration, Persistence, or Pace**

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that, in assessing her RFC, the ALJ failed to consider adequately her moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 15-1. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in

the claimant's RFC. *Id.* In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3),

416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).

Here, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to low-stress work, defined as "occasional decision-making" and "no fast paced production" (R. at 21, 79), accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that hypothetical question that referenced individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, or pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that ALJ captured claimant's moderate limitation in concentration, persistence, and pace when ALJ included restriction of "no high production goals"); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (using low production standards for moderate limitation in concentration, persistence, and pace); *Grant v.*

*Colvin*, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016); *Abee v. Colvin*, No. 1:14-CV-76-GCM, 2015 WL 5330452, at *6 (W.D.N.C. Sept. 14, 2015) ("[T]he ALJ's findings specifically addressed the Plaintiff's ability to stay on task as required by *Mascio*. The ALJ accounted for the Plaintiff's limitation in pace by restricting him to 'sedentary work,' and he accounted for his limitation in concentration and persistence by restricting him to a low-stress work environment with occasional decision-making, occasional changes in the work setting, and occasional interaction with the general public."). Plaintiff's argument that remand is warranted in this case under *Mascio* thus is without merit.

Plaintiff asserts, however, that the ALJ erred in failing to explain the mental limitations in her RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 7-9, ECF No. 15-1. While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), "the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ sufficiently explained why the mental restrictions in the RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace. R. at 19-21, 23-24, 25-27. The ALJ noted that Plaintiff could follow written and spoken instructions fairly well (R. at 20 (citing R. at 254)) and that her memory was adequate on examination in June 2014 (R. at 24 (citing R. at 593)). The ALJ further noted that a psychologist assessed Plaintiff's functional impairment in July 2014 as "mild to moderate" (R. at 24 (citing R. at 586)) and that Plaintiff "was consistently assessed with only a mild to moderate or moderate impairment in functioning" (R. at 25 (citing R. at 586, 610, 620, 645, 654, 661, 663-64, 670)). Furthermore, Plaintiff's anxiety in July 2014 was "present but not

as overwhelming." R. at 24 (citing R. at 593). The ALJ also found that Plaintiff's daily living activities belied her allegations of disabling symptoms. R. at 26. Moreover, in determining Plaintiff's mental RFC to "low stress" work involving occasional decision-making and no fast-paced production, the ALJ gave some weight to Dr. McCallister's opinion that Plaintiff could, among other things, understand and remember simple and detailed instructions and carry out simple and some detailed instructions in two-hour increments during an eight-hour workday (R. at 27 (citing R. at 108)). The ALJ thus considered Plaintiff's ability to stay on task and created "an accurate and logical bridge" from the evidence to her conclusion. *See Gates v. Astrue*, 338 F. App'x 46, 48 (2d Cir. 2009) (basis for ALJ's RFC determination that claimant was limited to low-stress work involving occasional decision-making was "clearly discernible" because of, *inter alia*, claimant's daily living activities).

**B.     ALJ's Physical RFC Assessment**

Plaintiff next asserts that, although she had been diagnosed with degenerative joint disease of the knees and an abnormal gait, the ALJ erred in failing to include any limitation upon her abilities to stand and walk in the RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 15-1. As the Commissioner points out, however, a "mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). Rather, "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam). Here, the ALJ found that Plaintiff's degenerative joint disease of the knees was a severe impairment but did not meet or medically equal Listing 1.02 (R. at 18-19). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. Contrary to Plaintiff's argument, the ALJ's assessment of her RFC to light work involving occasional climbing of ramps or stairs and occasional stooping, crouching, crawling, or kneeling accounted for her ability to stand and

walk, and was supported by substantial evidence. *See* R. at 25-27, 90-91, 105, 561-62. Because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim," *Reid*, 769 F.3d at 865, her contention in this regard is unavailing.

C.      **ALJ's Consideration of Plaintiff's 100% Disability Rating by VA**

Plaintiff finally contends that the ALJ failed to evaluate properly her 100% disability rating by the VA. Pl.'s Mem. Supp. Mot. Summ. J. 9-11, ECF No. 15-1. According to Plaintiff, in giving "some weight" to the VA rating, the ALJ did not indicate what aspects of the VA rating decision she accepted and rejected. The Commissioner maintains that the ALJ explained why she gave less than substantial weight to the VA rating and that the Court should not reweigh this evidence. Def.'s Mem. Supp. Mot. Summ. J. 10-14, ECF No. 16-1. As discussed below, Plaintiff's argument is unavailing.

The Fourth Circuit has held that, "in making a disability determination, the SSA must give substantial weight to a VA disability rating," but "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012). The ALJ in this case acknowledged the standard in *Bird* before affording the VA decision "some weight" in assessing the limitations associated with Plaintiff's impairments. R. at 26. The ALJ found that Plaintiff's daily living activities and the objective medical evidence, including Plaintiff's treatment notes, X-rays, and MRI, did not support finding Plaintiff more limited than the ALJ's RFC assessment. R. at 26, 348, 414. Furthermore, although the VA assigned a 40% disability rating to Plaintiff's neurogenic bladder condition (R. at 343), the ALJ explained why this condition did not limit her any further than the RFC assessment (R. at 25). Thus, unlike in *Bird*,

the ALJ gave several reasons for discounting the weight given to the VA disability rating. *See Griffin v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017) ("As the ALJ explained, although the VE assigned [the claimant] a 70 percent disability rating in 2011, [the claimant] performed substantial gainful employment for several years despite that rating, and was able to apply for and obtain new positions. Accordingly, the ALJ adequately explained his decisions for assigning the VA disability ratings little weight, and there is no violation of *Bird*." (citation omitted)); *Johnson v. Colvin*, No. 5:13-CV-509-FL, 2014 WL 4636991, at *8-9 (E.D.N.C. Sept. 16, 2014).

Plaintiff maintains, however, that, in doing so, the ALJ was not qualified to interpret the results of her X-rays and MRI. Although "an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so," *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007), "the weighing of various evidence is precisely the typical province of the ALJ." *Caines v. Colvin*, No. 8:14-CV-00388-JDA, 2015 WL 5178170, at *12 (D.S.C. Sept. 3, 2015). "If such a comparison was considered playing doctor, as proposed by Plaintiff, then the whole of the administrative review would be an illegality." *Id.* Rather, "[a] typical case of an ALJ impermissibly 'playing doctor' is when the ALJ draws medical conclusions themselves about a claimant without relying on medical evidence." *Foster v. Astrue*, No. CV-09-307-JPH, 2011 WL 1807426, at *9 (E.D. Wash. May 11, 2011) (citing *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)). Plaintiff's assertions regarding the ALJ's consideration of her 100% disability rating by the VA thus are without merit.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: March 20, 2017                                          /s/
                                                Thomas M. DiGirolamo
                                                United States Magistrate Judge